IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMMA CAMPO,　　　　　　　　　　　:
　　　　　Plaintiff　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　vs.　　　　　　　　　　　　　　　　: CIVIL NO. 1:CV-12-2396
　　　　　　　　　　　　　　　　　　　　:
CAROLYN W. COLVIN, Acting　　　　: 　　(Judge Caldwell)
Commissioner of Social Security　 :
　　　　　Defendant　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:

*M E M O R A N D U M*

I.　*Introduction*

Pursuant to 42 U.S.C. § 405(g), plaintiff, Emma Campo, seeks judicial review of the cessation of social security disability benefits after a decision by the Social Security Administration that she is no longer disabled.  The defendant is Carolyn W. Colvin, the Acting Commissioner of Social Security.[1]  Campo argues that the administrative law judge (ALJ) did not properly assess her complaints of pain nor did he properly assess in regard to her ability to work her testimony concerning the effect of medication and her need for bathroom breaks.

---

[1] The case had been brought against Michael Astrue, the former Commissioner. Pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g), Colvin is substituted as the defendant.

II. *Background*

As indicated above, Plaintiff had been found to be disabled in the past. On October 28, 2004, Plaintiff was found to be disabled beginning January 1, 2000. However, on December 4, 2009, the Social Security Administration notified Plaintiff she was no longer considered disabled as of December 1, 2009. (Tr. 10).[2] At the hearing held on Plaintiff's challenge to this determination, the ALJ determined that as of December 1, 2009, Plaintiff has Crohn's disease, pernicious anemia, fibromyalgia, degenerative disc disease of the lumbar spine, hypokalemia, peripheral neuropathy, depression, and anxiety. (Tr. 12).[3]

Plaintiff was forty-five years old at the time of the hearing. (Tr. 144). She has had twelve years of education. (Tr. 64). Her past work was as a pharmacy technician, from about March 1983 through November 1999. (Tr. 35).

Plaintiff lives with her husband and mother. (Tr. 54). She reported that she prepared meals, did light housecleaning, washed some laundry, shopped for groceries when she had to, groomed herself, drove a car when she had to, read, and watched television. (Tr. 55, 140-41, 151-54). Plaintiff reported that she was able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (Tr. 154).

---

[2] References to "Tr. ___" are to pages of the administrative record Defendant filed on March 11, 2013.

[3] The previous finding of disability had been based on Crohn's disease, Crohn's abscess, partial bowel obstruction, and adjustment disorder with depression and anxiety. (Tr. 12).

Plaintiff also reported no difficulties with concentrating, completing tasks, getting along with people, and remembering directions and understanding them. (Tr. 142, 155).

At the hearing, Plaintiff testified that her Crohn's disease makes her "bathroom bound." (Tr. 44). She has to spend some time in the bathroom every couple of hours every day; it could even be three times an hour. (Tr. 45). In the morning, it is more frequent. (Tr. 45). Until she is done with this activity, three hours could have elapsed. (Tr. 46). She delays eating because of it. (Tr. 46). There are ten to twelve days per month when she has to spend the entire day going in and out of the bathroom. (Tr. 46-47). Plaintiff has been incontinent on occasion. (Tr. 62). Other than medication, Plaintiff's physicians have not recommended any other treatment. (Tr. 61).

Plaintiff also testified that she has a constant pain running down her left leg from the buttock to her toes. (Tr. 50-51). She cannot stand more than twenty minutes before she must sit or lay down. (Tr. 52). She must also take breaks between activities, like having to rest after making her bed. (Tr. 60). She must sometimes elevate her leg during the day to relieve the pain. She takes Bentyl for the Crohn's disease and if she takes two or three of the pills for severe pain, she could fall asleep. (Tr. 41).

The ALJ decided that Plaintiff had moderate restrictions on concentration, persistence and pace. (Tr. 13). He also decided that Plaintiff had the residual functional capacity to perform light exertional work with certain modifications. In part, Plaintiff would have to have a sit-stand option every one-half hour and work at jobs which are simple and routine. (Tr. 14). Based on Plaintiff's residual functional capacity, the ALJ found

that she could work at sedentary unskilled positions such as video monitor, telephone clerk and order clerk. (Tr. 20). Plaintiff appealed the ALJ's decision to the Appeals Council, which affirmed the decision. (Tr. 1).

III. *Standard of Review*

The Appeals Council's denial of Plaintiff's request for review made the ALJ's decision the decision of the Commissioner. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 91 (3d Cir. 2007). It is therefore the ALJ's decision we review. In doing so, we review the ALJ's application of the law de novo, *id., and* we review the ALJ's factual findings to see if they are supported by substantial evidence. *Id.* (citing in part 42 U.S.C. § 405(g)). Generally, substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)(quoted case omitted). It is "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoted case omitted).

We must uphold factual findings supported by substantial evidence. *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). It follows "that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Put another way, we cannot reverse the Commissioner's decision simply because we might "have decided the factual inquiry differently." *Fargnoli, supra,* 247 F.3d at 38.

IV. *Discussion*

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he did not use the proper standard for evaluating her subjective complaints of pain and other symptoms. Plaintiff specifically cites her need to use the bathroom frequently and her need to take breaks in her activities accompanied by a need to raise her left leg to alleviate pain. Plaintiff argues that the ALJ's decision not to fully credit her testimony concerning her limitations is not supported by the record as a whole. Nor does any of the medical evidence contradict Plaintiff's testimony concerning her limitations, limitations which affect her concentration, persistence and pace. Plaintiff also objects that the ALJ did not properly evaluate the effects of medication on her ability to work.

We disagree with Plaintiff. To begin with, and as noted by Defendant, Plaintiff does not refer us to those portions of the record that support her argument. Next, in any event, the ALJ did properly explain why he did not fully credit Plaintiff's testimony concerning her limitations.

"An ALJ may reject a claimant's subjective complaints when the ALJ 'specif[ies] his reasons for rejecting the[ ] claims and support[s] his conclusion with medical evidence in the record.'" *Martin v. Commissioner of Social Security*, ___ F. App'x ___, ___, 2013 WL 6501335, at *5 (3d Cir. 2013)(nonprecedential)(quoting *Matullo v. Bowen,* 926 F.2d 240, 245 (3d Cir. 1990)).

The ALJ complied with this standard. The ALJ stated that he did not find Plaintiff fully credible because the medical evidence "simply" did not support her "alleged

level of incapacity."  (Tr. 15).  He then cited specific portions of the medical record to support his conclusion.  (Tr. 15-17).  In pertinent part, he began by citing a treatment note from March 2009 that "did not indicate any significant difficulties or functional limitations related to her impairments."  (Tr. 15-16).  A review of this note supports the ALJ's interpretation of it.  Plaintiff was in a good general state of health, no weakness or fatigue.  (Tr. 291).

   The ALJ next cited the August 2009 consultative examination performed by Joyce Vrabec, D.O.  Dr. Vrabec noted that Plaintiff had a completely normal ability to ambulate.  (Tr. 308).  On examination, Plaintiff had an unremarkable back with full range of motion, a normal musculoskeletal system with normal range of motion, a non-tender abdomen with normal bowel sounds.  There was no sign of acute synovitis, and she had no bone, joint, or muscle tenderness.  (Tr. 308-309).  Plaintiff also had a normal neurological examination with no overt signs of anxiety or depression.  (Tr. 309).  Dr. Vrabec observed that the Crohn's disease was "well controlled" at that time "despite subjective complaints of fatigue and arthropathy.  (Tr. 309).  Dr. Vrabec further opined that Plaintiff had no functional limitations.  (Tr. 310-11).

   In September and October 2010, Plaintiff visited with Physician Associates to establish a relationship with a primary care physician.  The ALJ noted that examinations at both visits  indicated no abnormalities, (Tr. 411-412, 415-416), and that Plaintiff reported that she felt well and had no complaints.  (Tr. 411, 415).  The ALJ also observed, "no medication side effects or frequent use of bathroom was noted as

reported," (Tr. 16), and that medication for Crohn's disease and panic disorder had been continued. (Tr. 412. The ALJ also noted that follow-up was in three months (Tr. 412), indicating to him that there was "no need for more frequent or invasive treatment." (Tr. 16).

In September 2010, Plaintiff visited Yen Chen, M.D., at Pocono Gastroenterology, PC, for further evaluation and management of her Crohn's Disease. (Tr. 388). Plaintiff reported that the pain from her Crohn's disease was not significant and was alleviated with medication. (Tr. 388). She complained of poor appetite, change in bowel habits, diarrhea, and back pain. The ALJ noted there was no indication of side effects "or frequent use of the bathroom as testified to by claimant." (Tr. 17). On examination, Dr. Chen noted that Plaintiff appeared healthy and well developed; she was in no acute distress; she had non-distended abdomen; normal bowel sounds; no abdominal muscle guarding; no organomegaly; no rebound tenderness or tenderness; normal strength in the lower extremities and intact motor strength in the upper extremities. (Tr. 389). Dr. Chen diagnosed Plaintiff with enteritis and noted that "she seemed okay" on Lialda. (Tr. 389). Follow-up was to be in six months. (Tr. 389).

During September and October 2010, Plaintiff treated with James J. Kerrigan, M.D., a neurologist at Neurology Associates. In September, she visited, complaining of bilateral leg pain with occasional weakness in her legs. (Tr. 423). She reported no change in bowel or bladder function but said she had "frequent stools related to her Crohn's disease." (Tr. 423). On examination, Dr. Kerrigan noted that Plaintiff had

tenderness in the low lumbar region at L5-S1, normal muscle tone in the upper and lower extremities, antalgic gait and was able to heel-toe walk with some difficulty. (Tr. 425-426). Dr. Kerrigan diagnosed peripheral neuropathy and prescribed Mobic. (Tr. 426).

In a follow-up visit with Dr. Kerrigan in October 2010, Plaintiff reported that the Mobic had helped the pain she was feeling in her left hip and that she still had occasional pain but it was not persistent. (Tr. 420). She was stable neurologically for decreased sensation in her lower extremities. (Tr. 420). She was to continue with the Mobic. (Tr. 420).

Following the above review of the medical records, the ALJ stated:

> Claimant has not required hospitalization for her Crohn's disease in the last 5 years. Her care has been limited to seeing a gastroenterologist twice a year and the use of pain medication. Treatment for her back complaints ha[s] been conservative. No surgery has been proposed. Her pain has been controlled somewhat with medication. Physical examination findings related to her back were benign other than some tenderness and decreased sensation. Claimant does not report side effects from medication or frequent bathroom use with the severity described at the hearing. There is no indication in the record that claimant is required to elevate her feet. Mental health treatment has been limited to medication prescribed by her primary care physician. Mental status examination findings have not been significant. No treating or examining source has suggested work related limitations as severe as those alleged by claimant.

(Tr. 17).

We believe this analysis satisfied the ALJ's obligation to explain why he rejected Plaintiff's subjective complaints of pain, her testimony about being bathroom bound, and her testimony concerning the side effects of her medication.

-8-

Plaintiff also argues that the ALJ failed to follow the analysis suggested in Social Security Ruling 96-7p. Plaintiff relies on that section of the ruling, entitled "Medical Treatment History," that advises administrative law judges on how to assess the credibility of claimants on the basis of their medical history. Plaintiff cites language in that section that deals with explanations a claimant may have for not seeking medical treatment or in only seeking it infrequently while still complaining of potentially disabling pain.

This section of the ruling has no bearing here. It instructs the fact finder "not [to] draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." In the instant case, the ALJ did not assess Plaintiff's credibility on the basis of her failure to seek medical treatment or to seek it only occasionally. He did so on the basis that her complaints could not be substantiated on the basis of the medical record and the course of treatment doctors prescribed, when she did seek medical treatment.

We will issue an appropriate order.

 s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 27, 2014